IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                              )
                                    )
KEITH ALLEN PORTELL and             )      Case No. 12-44058-13
MICHELE LYNN PORTELL,               )
                                    )
            Debtors.                )

## ORDER GRANTING MOTION TO SPEND INHERITANCE and DENYING THE TRUSTEE'S MOTION TO AMEND PLAN and ORDERING THAT THE DEBTORS OTHERWISE AMEND THEIR PLAN

Chapter 13 Debtors Keith and Michele Portell filed a Motion to spend an inheritance which Keith Portell received postpetition. The Debtors are proposing to use a portion of the inheritance pay off all the debts on which Keith Portell is obligated, including the Debtors' residential mortgage, and keep the rest of the funds;  they do not plan to use the funds to pay the debts on which Michele Portell is individually obligated. The Chapter 13 Trustee objects, asserting that all claims in the case should be paid from the inheritance. For the reasons that follow, the Trustee's Objection will be OVERRULED, and the Debtors' Motion to Spend Inheritance will be GRANTED. In addition, the Trustee's Motion to Amend Plan will be DENIED; however, the Debtors will be ordered to amend their Plan to provide that after using the inheritance to pay Keith's creditors, and the joint creditors, they will continue to make payments until Michele's creditors receive the same dividend provided in the plan previously confirmed.

The Debtors filed this Chapter 13 bankruptcy case on September 27, 2012. They are below-median. Pursuant to their confirmed plan, allowed unsecured claims are being paid a liquidation analysis pot of $23,130.07, which results in a

dividend of 40.334%. According to the Trustee, the Plan is running approximately 63 approximately months.

On July 23, 2015, which was in the thirty-fourth month of the plan, a relative of Keith Portell passed away, leaving Keith an inheritance which included funds in the amount of $221,510.53. The Trustee does not dispute that the Debtors promptly reported the inheritance to him upon receipt. In this motion, the Debtors are proposing to use the inheritance funds to pay all joint and sole debt owed by Keith, including the joint obligation secured by their homestead. They are proposing not to pay the debts for which only Michele is obligated. According to the parties, this will leave approximately $12,000 of Michele's separate debts unpaid.

The Chapter 13 Trustee objects, asserting that the inheritance should go to pay all of the Debtors' debts, including Michele's separate debts. He asserts that the inheritance is: (i) property of the estate under § 1306(a)(1); (ii) income; and (iii) a postpetition change in circumstances under § 1329 of the Bankruptcy Code, requiring a modification of the Plan. The Trustee further asserts that, in considering any modification under § 1329, the good faith requirement of § 1325(a)(3) should be considered, and proposing to pay less than 100% of all claims is lacking in good faith under the circumstances.

### *Is the Inheritance Property of the Estate?*

In a Chapter 13 bankruptcy case such as the one here:

Property of the estate includes, in addition to the property specified in section 541 of this title . . . (a) all property of the kind specified in such section that the debtor acquires after the commencement of the

case but before the case is closed, dismissed, or converted to a case
under chapter 7, 11, or 12 of this title, whichever occurs first.[1]

Section 541(a)(1) defines property of the estate exceptionally broadly, to include
"all legal or equitable interests of the debtor in property as of the commencement
of the case."[2]   Without question, had Keith received this inheritance on the day
before the bankruptcy filing, it would have been property of his bankruptcy estate
pursuant to § 541(a)(1).  While most courts have concluded that such a postpetition
inheritance is property of the estate in a Chapter 13 case pursuant to § 1306(a)(1),[3]
a minority of courts disagree,[4] and there is  no controlling authority in this district.[5]
Since the Debtors here are "presum[ing] for the sake of argument an inheritance

---

[1] 11 U.S.C. § 1306(a)(1).  Note that, had the Debtors received this inheritance within the
180 days after they filed their petition, it would have been property of the estate pursuant to §
541(a)(5).  Indeed, Keith actually received a different inheritance within the 180 days
postpetition, and, because he did not turn it over at the time it was received, the value of that
inheritance is included in the Plan's liquidation analysis pot.  The Debtors did not raise the state
law issue discussed below with regard to that inheritance.

[2] 11 U.S.C. § 541(a)(1).  *See also In re True*, 285 B.R. 405, 412 (Bankr. W.D. Mo. 2002)
("The Eighth Circuit has recognized that '[t]he legislative history of this section clearly
establishes Congressional intent that the bankruptcy estate be as all-encompassing as the
language indicates.") (citation omitted).

[3] *See, e.g.*, *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013) (holding that "the
overwhelming majority of courts to have addressed this issue agree that § 1306 modifies the §
541 time period in Chapter 13 cases"; therefore, an inheritance received more than 180 days
postpetition in a Chapter 13 case is nevertheless property of the estate pursuant to § 1306)
(citation omitted); *In re Gilbert*, 526 B.R. 414, 418 (Bankr. N.D. Ga. 2015) ("Moreover,
Congress intended to expand property of the estate in chapter 13 cases, and this resolution of the
two statutes does just that.").

[4] *See, e.g.*, 465 B.R. 709, 711 (Bankr. S.D. Ga. 2012) ("The Trustee's interpretation
overlooks the express time limitation set forth in § 541(a)(5). . . ."); *In re Walsh*, 2011 WL
2621018 at *3 (Bankr. S.D. Ga. June 15, 2011) ("Here, the more specified date restriction that
helps define the kind of property included in the estate pursuant to § 541(a)(5) controls and is not
superseded by conflicting temporal elements of § 1306(a)(1).").

[5] I note, however, that the Eighth Circuit has previously concluded that Chapter 13
debtors are obligated to amend their bankruptcy schedules to list a postpetition cause of action.
*See*, *e.g.*, *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1033 (8th Cir. 2016).

may be considered as property of the estate" pursuant to §§ 1306(a) and 541,[6] and since I am ruling for the Debtors on other grounds, I need not decide that issue here.

However, while the Bankruptcy Code determines what interests constitute property of a bankruptcy estate, state law governs what a debtor's property interests are.[7]

As relevant here, § 451.250.1 of the Missouri Statutes provides:

All real estate and any personal property, including rights in action, belonging to any man or woman at his or her marriage, or which may have come to him or her during coverture, by gift, bequest or inheritance, or by purchase with his or her separate money or means, or be due as the wages of his or her separate labor, or has grown out of any violation of his or her personal rights, shall, together with all income, increase and profits thereof, be and remain his or her separate property and under his or her sole control, *and shall not be liable to be taken by any process of law for the debts of his wife or her husband*.[8]

Under this statute, the inheritance received by Keith is his own separate property which, outside of bankruptcy, cannot involuntarily be taken to pay Michele's separate debts.   The question presented here is whether the filing of the joint bankruptcy case changes that premise.

Section 302 of the Bankruptcy Code authorizes the filing of a joint bankruptcy petition by an individual and the individual's spouse.[9]   However, "[a]lthough § 302(a) allows a husband and wife to file a petition together which is

---

[6] Debtors' *Additional Authorities in Support* (Doc No. 175).

[7] *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979).

[8] Mo. Rev. Stat. § 451.250.1 (emphasis added).  The original version of this statute was known as the "Married Women's Act," but was made gender-neutral in 2001.  *See* 2001 Mo. Legis. Serv. H.B. 537.

[9] 11 U.S.C. § 302(a).

given only one case number, their two estates remain separate."[10] "Thus, the filing of a joint petition does not in and of itself create a single pool of assets out of which all creditors of the two individuals will be paid, but merely allows the two estates to be jointly administered."[11]

Section 302(b) provides that after the commencement of a joint case, "the court shall determine the extent, if any, to which the debtors' estates shall be consolidated."[12] "Substantive consolidation of two bankruptcy estates 'means assets and liabilities of both debtors are pooled.'"[13] This case has not been substantively consolidated, and no one has asked that it be consolidated. That said, in considering a request for substantive consolidation, "a court must determine: (1) whether there is a substantial identity between the assets, liabilities, and handling of financial affairs between the debtor spouses; and (2) whether harm will result from permitting or denying consolidation."[14] "Ultimately, the court must be persuaded that the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition."[15] "[S]ubstantive consolidation should be invoked 'sparingly' when any creditor or debtor objects to its use."[16] "The determination is made on a case-by-case basis through an examination of the extent of jointly held property and

---

[10] *In re Pruitt*, 2011 WL 2292205 at * 6 (Bankr. D. Or. June 8, 2011) (citation omitted).

[11] 2 Collier on Bankruptcy ¶ 302.01 (Alan N. Resnick and Henry J. Sommer eds., 16th ed.) (citations omitted).

[12] 11 U.S.C. § 302(b).

[13] *Boellner v. Dowden*, 612 Fed. Appx. 399, 401 (8th Cir. 2015) (citation omitted). *See also In re Pruitt*, 2011 WL 2292205 at *6 (Bankr. D. Or. June 8, 2011) ("Substantive consolidation combines the assets and liabilities of the separate estates to create a single fund from which a common pool of claims is paid.").

[14] *Id.* (citing *In re Reider*, 31 F.3d 1102, 1108 (11th Cir. 1994)).

[15] *Id.* (quoting *In re Reider*, 31 F.3d at 1109).

[16] 2 Collier on Bankruptcy ¶ 302.06 (discussing *In re Reider*, 31 F.3d 1102).

jointly owed debts."[17]    Some courts hold that "[t]he standard for substantive consolidation in the spousal context is whether the affairs of the husband and wife are so intermingled that their respective assets and liabilities cannot be separated."[18]

As stated, no one has expressly asked that the Debtors' estates here be substantively consolidated under § 302(b), but, in asking that Keith's separate property be used to pay Michele's separate debts, that is, in effect, what the Trustee is seeking here.

The Trustee asserts that § 451.250 "was not intended to protect [Keith] and is not a vehicle within which the debtors can exclude a portion of the inheritance proceeds as property of the estate for his benefit."  As stated above, the Trustee is correct that the inheritance is property of Keith's bankruptcy estate.  But that does not answer the question of who must be paid from it.  On that question, contrary to the Trustee's position, protecting Keith's inheritance from Michele's creditors is very clearly the intent of the statute.

In *In re True*,[19] the Honorable Jerry W. Venters found that farm property which was titled in the name of a debtor's non-filing spouse was the non-filing spouse's separate property and, therefore, pursuant to § 451.250.1, the farm was not property of the debtor's bankruptcy case subject to his creditors.[20]  The Trustee attempts to distinguish *In re True* on the basis that the debtor in that case had purchased and maintained the farm property for several years.  However, that fact

---

[17] *In re Seligman*, 417 B.R. 171, 174 (Bankr. E.D. N.Y. 2009) ("[C]onsolidation should be invoked 'sparingly' when any creditor or debtor objects to its use").

[18] *See, e.g.*, *In re Estrada*, 224 B.R. 132, 135 (Bankr. S.D. Cal. 1998) (citing *In re Reider*, 31 F.3d at 1105).

[19] 285 B.R. 405 (Bankr. W.D. Mo. 2002).

[20] When Judge Venters issued his opinion in *In re True*, § 451.250 was known as the "Married Women's Act," but the statute was amended in 2001 to be gender-neutral.

was only relevant to Judge Venters' factual finding that the farm was the spouse's separate property, not to the question of whether the statute protected it from the debtor's creditors if it was, in fact, the non-filing spouse's separate property. Here, I need not analyze whether the inheritance is Mr. Portell's separate property under the statute because no one disputes that it was left by his relative to him alone, and the statute expressly says such inheritances are separate property. Judge Venters' discussion of the factual characteristics of the farm is, therefore, not relevant here. His holding that the farm was not available to pay the debtor-spouse's separate debts, on the other hand, is relevant.

The Trustee cites no case, and I found none, where a bankruptcy court held that one spouse's separate property under state law is property of the other spouse's bankruptcy estate under § 541 or, by extension, § 1306. I conclude, therefore, that pursuant to Missouri law, Keith's inheritance is his separate property and is includable in only his bankruptcy estate for the payment of only the debts for which he is liable.

### *Is the Inheritance a Substantial Change in Circumstances Mandating an Amended Plan?*

In conjunction with his objection to the Debtors' motion to spend the inheritance, the Trustee has also filed a Motion to Amend Plan pursuant to § 1329, requesting that the plan be amended to a 100% plan and provide for payoff of all claims within 90 days of confirmation of that plan. Section 1329(a) provides that, "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to . . . increase or reduce the amount of payments on claims of a particular class provided for by the plan." Section

7

1329 "has been interpreted by most courts as being limited to situations where there has been a substantial change in circumstances."[21]   A significant change in income would be such a circumstance.   In addition, courts have held that a significant postpetition inheritance is a substantial change in circumstances for purposes of § 1329.[22]

I agree that the inheritance in this case is a substantial change in circumstances warranting an amended plan.  The question is, however, what must an amended plan propose?

### *Is the Inheritance Disposable Income Under § 1325(b)(1)(B) or Additional Future Income Under § 1322(a)(1)?*

Although not raised in his Motion to Amend the Plan, the Trustee asserted in his initial objection to the Debtor's motion to spend the inheritance that the inheritance is "disposable income."   Section 1325(b)(1)(B) requires that, if the trustee or holder of an allowed unsecured claim objects to the confirmation of a plan, then the court may not approve the plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first

---

[21] *In re Johnson*, 458 B.R. 745, 748 (B.A.P. 8th Cir. 2011) (citations omitted).

[22] *See, e.g.*, *Goodman v. Gorman*, 534 B.R. 656 (E.D. Va. 2015); *In re Bass*, 267 B.R. 812, 814 (Bankr. S.D. Ohio 2001) ("A debtor might receive unanticipated income over the first thirty-six months of the plan that is not reasonably necessary for maintenance or support (e.g., wage increases, tax refunds, inheritances, gifts, lottery proceeds, insurance proceeds, proceeds from causes of action, or proceeds from the sale of property)."); *In re Jacobs*, 263 B.R. 39, 46 (Bankr.N.D.N.Y.2001) ("For purposes of plan modification, an increase in income or the receipt of a large sum of money constitutes a substantial change.... [T]his is so where the debtor acquires property post-confirmation, the likes of which would result in a windfall to the debtor absent plan modification, such as lottery winnings or an unexpected inheritance."); *In re Studer*, 237 B.R. 189, 192 n. 5 (Bankr.M.D.Fla.1998) ("Courts easily have found a substantial or unanticipated change where the debtor's income drastically increases. Such windfalls include winning the lottery after confirmation of the Chapter 13 plan. Substantial and unanticipated circumstances also include the receipt of a large inheritance." (citations omitted)).

8

payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[23]    However, § 1325(b)(1)(B)'s disposable income requirement does not apply to Chapter 13 plan modifications,[24] which may be why the Trustee appears to have abandoned that argument.

Nevertheless, because the Trustee cited *In re Honey* here,[25] a discussion of that case is warranted.

*In re Honey* was a Chapter 12 case.  The married debtors there had proposed a five-year plan, commencing on April 11, 1988.  One of the debtor's father passed away in June 1992, and the estate was admitted to probate in October 1992.  However, that debtor did not actually receive the inheritance until shortly after the plan concluded in April 1993.  The debtors there never disclosed the expected inheritance.  However, an undersecured creditor who had not been paid on its unsecured claim apparently found out about it shortly after the discharge was entered, and filed an adversary proceeding seeking to revoke the discharge and require a plan modification to commit the inheritance to unsecured creditors, or to convert the case to Chapter 7 based on the debtors' fraudulent failure to disclose the inheritance.

On the question of modification, the District Court concluded that it was without jurisdiction to require modification of a Chapter 12 plan which had already run the statutory maximum of five years.[26]

---

[23] 11 U.S.C. § 13225(b)(1)(B).

[24] *In re Gengenbach*, 2008 WL 1767061 (Bankr. D. Neb. April 10, 2008) (holding that § 1329 "by its terms excludes § 1325(b) and the best efforts/disposable income test from consideration" of a plan modification) (citing *Forbes v. Forbes* (*In re Forbes*), 215 B.R. 183, 191 (B.A.P. 8th Cir. 1997) ("We agree that Congress omitted Code Section 1325(b) in the requirements for postconfirmation plan modification, and further, decline to take its prerogative as our own.")).

[25] 167 B.R. 540 (W.D. Mo. 1994).

Nevertheless, the District Court concluded that that the inheritance was disposable income under § 1225(b)(1)(B). "Disposable income" was (and still is) defined in § 1225(b)(2) as the income received by the debtor that is not reasonably necessary for the maintenance and support of the debtor's family, and the preservation and operation of the debtor's business.[27] Declining to adopt a "Tax Code" analysis on the question of whether the inheritance was "income" for "disposable income" purposes,[28] the District Court concluded that allowing a debtor to keep large amounts of non-taxable income, such as an inheritance, "would result in a profound windfall for debtors in clear violation of the legislative intent behind Chapter 12."[29]  Further, the Court noted, under § 1222(b)(7), a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor."  The Court opined:  "In that the right to receive an inheritance, composed of real and/or personal property, constitutes 'property of the estate,' as declared by the bankruptcy court below, upon finding that inheritance is disposable income, it is irrelevant whether it is collected during the course of the Plan."  Since § 1228(a) requires that, in order to obtain a discharge, a debtor must  "complet[e] … all payments under the plan," and since all disposable income must be paid to unsecured creditors, the debtors were required to use the inheritance to pay unsecured creditors in full before they could obtain their discharge.

At the outset, I would mention that the distinction between "property of the estate" and "disposable income" in bankruptcy parlance is not always clear, and

---

[26] *See* 11 U.S.C. §§ 1229(c) and 1222(c).

[27] *Id.* at 543.

[28] The inheritance in *In re Honey* was not considered to be taxable income under the Internal Revenue Code.

[29] *Id.* at 544.

many courts and commentators blur the distinction.   Outside of bankruptcy, an inheritance might seem like "income" because the Internal Revenue Code considers it "income," albeit often non-taxable income.   In the bankruptcy context, I am not convinced it fits neatly into the definition of "disposable income," particularly in a Chapter 13 case, since "disposable income" is defined more narrowly for Chapter 13 purposes than in Chapter 12 cases such as *Honey*.[30] Rather, in my view, an inheritance fits more squarely into the concept of "property of the estate," which is why it is specifically mentioned in § 541(a)(5).   In any event, although the Court in *Honey* had also concluded that the inheritance there was property of the estate (as I have here), the ultimate reason the Court in *Honey* concluded the inheritance there was also disposable income was to prevent a windfall to the debtors.   As discussed more fully below in connection with good faith, I do not believe the Debtors' proposal here results in a windfall to them.   For those reasons, and because § 1325(b)(1)(B)'s disposable income requirement does not apply to Chapter 13 plan modifications, I conclude that *In re Honey* is not controlling here.

That said, § 1322(a)(1), which does apply to plan modifications, provides that a plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."   The Trustee asserts that the

---

[30] Section 1325(b)(2) defines "disposable income" for Chapter 13 plan confirmation purposes to mean "current monthly income" less reasonable expenses.   "Current monthly income" is defined, as relevant here, as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receives) without regard to whether such income is taxable income, derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of income required by section 521(a)(1)(B)(ii). . . ."

inheritance is such "other future income" which must be committed to payment of creditors.

What constitutes "other future income" under § 1322(a)(1) is analyzed in the context of a proposed plan, and specifically, whether the debtors are committing enough future resources "necessary for the execution of the plan" being proposed.[31]  Initially, the Debtors' confirmed plan here provided for a liquidation analysis pot of $23,130.07 and committed enough future income (through monthly payments from earnings) to execute that plan.  Therefore, the inheritance is only relevant to § 1322(a)(1) in the context of an amended plan based on changed circumstances.

As the Trustee asserts, some courts have held that postpetition inheritances are income pursuant to § 1322(a)(1) for purposes of plan modification.[32]  Again, I question whether an already-received inheritance is "income" (as opposed to property of the estate), much less "future income" under § 1322(a)(1).  But even if it is "future income" under § 1322(a)(1), Missouri law still prohibits creditors (or the Trustee) from forcing Keith to use his inheritance – whether classified as "income" or "property" – to pay Michele's creditors.  Because the Debtors are proposing to commit Keith's inheritance to pay his own creditors in full, the Debtors' proposal complies with § 1322(a)(1), to the extent it applies here.

---

[31] 8 Collier on Bankruptcy ¶ 1322.02[1] (Alan N. Resnick and Henry J. Sommer eds., 16th ed.) ("A chapter 13 plan must contain a provision calling for submission to the supervision and control of the chapter 13 trustee of whatever future income or earnings of the debtor are necessary for the execution of the plan.  It does not require that a chapter 13 plan propose to submit any portion of the future income of the debtor to the control of the trustee, except to the extent that the plan is to be funded from future income.").

[32] *See, e.g.*, *In re Flaming*, 2003 WL 22848925 (Bankr. D. Idaho, Nov. 10, 2003).

### *Payment of the Residential Mortgage*
### *as a Change in Michele's Circumstances*

I recognize that, because the Debtors are proposing to use some of the inheritance to pay off their residential mortgage, they will not have an ongoing mortgage payment, which is currently about $1000 per month.  This is, indeed, a substantial change in circumstances directly affecting Michele's finances, since it arguably frees up some of her income to pay her unsecured creditors.

However, the Debtors are below-median, meaning that they are only required to remain in their bankruptcy case for 36 months (or however much longer it takes to pay off the liquidation analysis pot).  The Debtors are past month 36 in their plan.  Although the Debtors must commit enough of their future income to fully pay the confirmed plan's 40.334% dividend to Michele's own unsecured creditors, her change in circumstances concerning her mortgage does not require more than that dividend after 36 months.

### *Good Faith Under § 1325(a)(3)*

Finally, although § 1325(b)'s disposable income test does not apply to plan modifications, § 1325(a)(3)'s good faith requirement does.[33]  The Trustee argues, in effect, that Keith's refusal to use his inheritance to pay Michele's separate debts is evidence of bad faith.

*In re Gengenbach*,[34] the bankruptcy court was faced with a factual scenario very similar to this one:  Two years into the debtors' Chapter 13 case, one of the joint debtors received a $468,000 inheritance.  The debtors there wanted to use

---

[33] *See In re Gengenbach*, 2008 WL 1767061 (Bankr. D. Neb. April 10, 2008).

[34] 2008 WL 1767061 (Bankr. D. Neb. April 10, 2008)

$2,800 of those funds to make a lump sum payment to accelerate completion of their Chapter 13 plan and receive a discharge. Allowed unsecured claims in the case totaled approximately $150,000. The Chapter 13 Trustee objected, and asserted that the change in circumstances warranted a plan amendment under § 1329(a). And, the trustee there asserted, because § 1329 incorporates § 1325(a)(3)'s good faith requirement, the debtors should be required to commit the inheritance to payment of unsecured creditors. The bankruptcy court there agreed, and held that the debtors' proposal to pay only $2,800 to complete their confirmed plan and discharge the remaining unsecured debt while keeping the balance of the $468,000 for themselves, was not made in good faith as required by §§ 1325(a)(3) and 1329.

I agree with the *Gengenbach* court's conclusion that a plan modification must meet § 1325(a)(3)'s good faith requirement and, generally, that debtors who receive postpetition inheritances should not receive an unfair windfall at the expense of their creditors. However, the *Gengenbach* court was not dealing with a statute similar to § 451.250.1; rather, the court there appeared to presume that the inheritance belonged to both debtors. But, as courts have held in connection with exemption planning, simply doing what the law allows you to do is not, in and of itself, bad faith.[35] Unlike *Gengenbach*, the question isn't whether the Debtors here received an unfair windfall. Instead, Michele herself received no inheritance. Any inheritance is a windfall; the question here is whose creditors get to share in that windfall. Since Michele's separate creditors would not be entitled to be paid from

---

[35] *See, e.g.*, *Norwest Bank of Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir. 1988) ("[A]bsent extrinsic evidence of fraud, mere conversion of non-exempt property to exempt property is not fraudulent as to creditors even if the motivation behind the conversion is to place those assets beyond the reach of creditors."); *Hanson v. First Nat'l Bank in Brookings*, 848 F.2d 866, 868 (8th Cir. 1988) (same).

Keith's inheritance outside of bankruptcy, I conclude it is not bad faith to provide the same treatment in a Chapter 13 plan.

### *Conclusion*

For the reasons stated, I conclude that Keith's inheritance is property of Keith's bankruptcy estate and, perhaps, disposable income attributable to Keith. Either way, however, absent bad faith, Missouri law prevents this Court from requiring Keith to use his inheritance to pay Michele's separate creditors. I find that the Debtors' proposal is made in good faith. As such, the Debtors must propose a plan which commits enough of the inheritance to pay Keith's creditors in full, but need not pay Michele's separate creditors more than the 40.334% provided in the previously confirmed plan.

ACCORDINGLY, the Debtors' Motion to Spend Inheritance is GRANTED; the Trustee's Objection to such Motion is OVERRULED. The Trustee's Motion to Amend Plan is DENIED. However, the Debtors are ORDERED to file an amended plan which pays the claim secured by their residential mortgage in full, pays Keith Portell's separate creditors in full, and pays a dividend of 40.334% to Michele Portell's separate unsecured creditors.

IT IS SO ORDERED.

Dated: 9/9/16                                    /s/ Arthur B. Federman
                                                U.S. Bankruptcy Judge